**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**26-20467-CR-WILLIAMS/LOUIS**
**CASE NO. ______________________**
**18 U.S.C. § 371**

FILED BY MHU D.C.
Nov 6, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES OF AMERICA**

**vs.**

**MARK GOODRICH,**

**Defendant.**
______________________________/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Defendant and Relevant Entities

1. Defendant **MARK GOODRICH** was a political consultant who worked with federal political campaigns, state political campaigns, political action committees ("PACs"), and tax-exempt nonprofit organizations recognized under Section 501(c)(4) of the Internal Revenue Code ("501(c)(4) nonprofits").

2. Unindicted Coconspirator 1 ("UCC 1") was a politician and businessperson in the Southern District of Florida. Following a special election, UCC 1 was sworn in as the United States Representative for Florida's 20th Congressional District on or about January 18, 2022. Once UCC 1 was sworn in as a Representative, UCC 1 immediately faced a reelection campaign,

with a primary on or about August 23, 2022, and a general election on or about November 8, 2022 (the "2022 reelection campaign").

3. Political Committee 1 was the principal federal campaign committee formed to receive campaign contributions for the election and reelection of UCC 1.

4. Bank 1 was a financial institution headquartered in New York, New York, with locations throughout the United States, including the State of Florida, whose accounts were federally insured by the Federal Deposit Insurance Corporation ("FDIC").

5. Truth & Justice Inc. ("Truth & Justice") was a Florida-registered 501(c)(4) nonprofit that **MARK GOODRICH** formed in or around August 2021. Incorporation documents filed with Florida stated that Individual 1 was the sole incorporator, registered agent, and officer of Truth & Justice. In reality, **GOODRICH**, not Individual 1, controlled the activities of Truth & Justice from its incorporation through its dissolution in or around September 2022. Truth & Justice maintained an account in its name at Bank 1 ending in 5583 ("Bank Account 1"). **GOODRICH** was not a signatory on Bank Account 1, but **GOODRICH** nonetheless exercised control over the account and outgoing transfers.

6. Unindicted Coconspirator 2 ("UCC 2") was a politician, businessman, and attorney in the Southern District of Florida and a friend and political supporter of UCC 1.

7. Individual 3 was related to UCC 1.

8. Nonprofit 1 was a Florida-registered 501(c)(4) nonprofit that UCC 2 incorporated in or around February 2022. UCC 2 and Individual 3 were directors of Nonprofit 1.

9. Contributor 1 was a businessperson and political supporter of UCC 1.

**<u>Relevant Federal Election Campaign Act Provisions</u>**

10. The Federal Election Campaign Act of 1971, as amended, Title 52, United States

Code § 30101, *et seq.* ("Election Act"), limited financial influence in the election of candidates for federal office, including for the United States Congress, and provided for public disclosure of the financing of federal election campaigns, as follows:

a. The Election Act limited the amount and sources of money that may be contributed to a federal candidate or a federal candidate's authorized committee.

b. In 2022, the Election Act limited both primary and general election campaign contributions by individuals to $2,900 from any individual or to any one candidate. The Election Act also prohibited any candidate, political committee, or other person from knowingly accepting or receiving a contribution in excess of these limitations.

c. Under the Election Act, individuals and organizations could independently spend unlimited amounts of money to influence federal elections, so long as the expenditures were made independently of a candidate, the candidate's authorized committee, and his or her agents ("independent expenditure"). However, expenditures by a person or organization in cooperation, consultation, or concert with, or at the request or suggestion of, a federal candidate, that candidate's authorized committee, or his or her agents, constituted a contribution to such candidate and were subject to the Election Act's contribution limits ("coordinated expenditure").

d. The Election Act prohibited a person from making a political contribution in the name of another person, including by giving funds to a "straw" or "conduit" contributor for the purpose of having the straw donor or conduit pass the funds on to a federal candidate as his or her own contribution. The Election Act also

prohibited a person from knowingly permitting his or her name to be used to effect such a conduit contribution.

11. The Federal Election Commission ("FEC") was an agency of the United States entrusted with the responsibility of administering and enforcing the Election Act. To deter abuses and instill public confidence in the election process, the FEC was responsible for receiving and making available to the public specific and accurate information about the amounts and sources of political contributions to federal candidates and political committees.

12. Pursuant to the Election Act, the FEC required campaign committees to file periodic reports of receipts and disbursements identifying, among other things, each person or organization that made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and the amount of any such contribution. The Election Act and the FEC also required every person or organization that was not a political committee and that made independent expenditures in excess of $250 with respect to a given election in a calendar year to report those expenditures, to identify each person or organization who made a contribution in excess of $200 to further the reported independent expenditures, and to certify under penalty of perjury that the expenditure was not made in cooperation, consultation, or in concert with, or at the request or suggestion of, a candidate, a candidate's authorized committee, or his or her agents. These periodic reports, which were filed with the FEC and made publicly available, were intended to provide the public with a record of contributions to candidates for federal office.

**Conspiracy to Make Excessive Campaign Contributions, Make False Statements, and Obstruct Justice**
**(18 U.S.C. § 371)**

13. From on or about January 1, 2022, and continuing through on or about November

30, 2022, in the Southern District of Florida, and elsewhere, the defendant,

**MARK GOODRICH,**

did knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to the United States Attorney, including UCC 1 and UCC 2, to commit the following offenses against the United States:

a. To knowingly and willfully make and cause to be made contributions to Political Committee 1 in excess of the limits of the Election Act, and that excess amount aggregating $25,000 and more in calendar year 2022, and to do so by making and causing contributions to be made by Truth & Justice to Political Committee 1 in the form of coordinated expenditures by Truth & Justice for advertisements supporting UCC 1's election, which expenditures were made in cooperation, consultation, and concert, with, and at the request and suggestion of, UCC 1 and UCC 1's agents, in violation of Title 52, United States Code, Sections 30116(a)(1)(A), 30116(a)(7)(B)(i), and 30109(d)(l)(A)(i), and Title 18, United States Code, Section 2;

b. To knowingly and willfully cause the submission of materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Election Commission, a department or agency of the executive branch of the government of the United States, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2; and

c. To knowingly conceal, cover up, falsify, and make a false entry in records and documents, and cause others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the

jurisdiction of the Federal Election Commission, a department and agency of the United States, and in relation to and contemplation of such matter, in violation of Title 18, United States Code, Sections 1519 and 2.

**PURPOSE OF THE CONSPIRACY**

14. It was a purpose of the conspiracy to unlawfully and secretly funnel money from Contributor 1, through Nonprofit 1, to Truth & Justice to support UCC 1's federal campaign. It was a further purpose of the conspiracy to cause Truth & Justice to make illegal excessive contributions to Political Committee 1 by causing Truth & Justice to secretly coordinate with UCC 1 and Political Committee 1 on advertisements supporting UCC 1's federal candidacy. It was a further purpose of the conspiracy to cause Political Committee 1 to file false reports of contributions and expenditures that concealed from the FEC and the public the illegal coordination with Truth & Justice, which impeded, obstructed, and influenced the investigation and proper administration of a matter within the jurisdiction of FEC.

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which **MARK GOODRICH** and his co-conspirators sought to accomplish the purposes of the conspiracy included, among other things, the following:

15. The conspirators would and did orchestrate the concealed movement of more than $150,000 from Contributor 1, through Nonprofit 1, to Truth & Justice for the coordinated purpose of funding advertisements that urged voters to support UCC 1 in the November 2022 general election.

16. The conspirators would and did cause Truth & Justice to make more than $150,000 worth of hidden contributions to Political Committee 1 in the form of coordinated expenditures.

17. The conspirators would and did cause Political Committee 1 to make and keep false records and submit false reports to the FEC.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purposes thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, amongst others:

1. In or around April 2022, in Miami-Dade County, in the Southern District of Florida, UCC 1 met Contributor 1 at a meeting that UCC 2 had organized. Contributor 1 wanted to help finance UCC 1's 2022 reelection campaign.

2. UCC 1 told **MARK GOODRICH** that UCC 1 was getting money from a wealthy Haitian couple so they could pay campaign expenses. UCC 1 said that the couple would give money to Nonprofit 1, and that **GOODRICH** should speak with Individual 3 or UCC 2 about getting the money.

3. **MARK GOODRICH** spoke with UCC 2 and Individual 3, who instructed **GOODRICH** to write a letter asking Nonprofit 1 for money. UCC 2 and Individual 3 advised **GOODRICH** to be as vague as possible regarding what Truth & Justice would do with the money.

4. Truth & Justice solicited approximately $823,000 from Nonprofit 1 via letters that **MARK GOODRICH** emailed to UCC 2. The letters stated that Truth & Justice was requesting money from Nonprofit 1 to fund voter outreach and education efforts. The letters made no mention of UCC 1 or her reelection campaign. The letters were purportedly signed by Individual 1, Truth & Justice's listed Executive Director, but in truth, **GOODRICH** signed Individual 1's name to the letters and UCC 2 and Individual 3 had told **GOODRICH** the amount of money to request in the letters.

5. UCC 1, UCC 2, and Individual 3 instructed **MARK GOODRICH** to create and send the letters to conceal the true purpose of the transfers: for Truth & Justice to use the money to make expenditures in support of UCC 1's 2022 reelection campaign.

6. In July 2022, Nonprofit 1 began paying Truth & Justice. From on or about July 21, 2022, through on or about November 10, 2022, Nonprofit 1 transferred approximately $725,000 to Truth & Justice's Bank Account 1.

7. From on or about July 29, 2022, through on or about August 17, 2022, Truth & Justice wired more than $150,000 to a graphics printing vendor located in the Southern District of Florida for mailers ordered by and in support of UCC 1's campaign. UCC 1 instructed **MARK GOODRICH** to make the transfers to pay campaign-related expenses. UCC 1 had reviewed and approved the content of the mailers.

[This Section Intentionally Left Blank]

8. Truth & Justice never registered with the FEC as a political committee. Truth & Justice did not disclose any of its receipts or expenditures to the FEC. Political Committee 1 never disclosed receiving any contributions, either direct or in kind, from Truth & Justice.

All in violation of Title 18, United States Code, Section 371.

FOR:

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

ALEJANDRA L. LOPEZ
ASSISTANT UNITED STATES ATTORNEY

JOHN P. TADDEI
TRIAL ATTORNEY, CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

ELI S. RUBIN
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**

**v.**

**MARK GOODRICH,**

**Defendant.** /

**CASE NO.:** 26-20467-CR-WILLIAMS/LOUIS

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☑ Miami ☐ Key West ☐ FTP
☐ FTL ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: __________
4. This case will take 0 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

| (Check only one) | | (Check only one) |
|---|---|---|
| I | ☑ 0 to 5 days | ☐ Petty |
| II | ☐ 6 to 10 days | ☐ Minor |
| III | ☐ 11 to 20 days | ☐ Misdemeanor |
| IV | ☐ 21 to 60 days | ☑ Felony |
| V | ☐ 61 days and over | |

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge __________ Case No. __________
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge __________ Magistrate Case No. __________
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) _____
   If yes, Judge Darrin P. Gayles Case No. 25-CR-20500-GAYLES/SHAW-WILDER
9. Defendant(s) in federal custody as of __________
10. Defendant(s) in state custody as of __________
11. Rule 20 from the __________ District of __________
12. Is this a potential death penalty case? (Yes or No) No
13. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
14. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No
17. Did this matter involve the participation of or consultation with Magistrate Judge Brandy Brentari Galler during her tenure at the U.S. Attorney's Office, which concluded on July 30, 2026? No

By: ____________________
Alejandra Lopez
Assistant United States Attorney
Florida Bar No. 37132

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: MARK GOODRICH

**Case No**: 26-20467-CR-WILLIAMS/LOUIS

Count #: 1

Conspiracy to Make Excessive Campaign Contributions, Make False Statements, and Obstruct Justice

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.

MARK GOODRICH,
*Defendant*

Case No. 26-20467-CR-WILLIAMS/LOUIS

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: ____________________

____________________________________
*Defendant's signature*

____________________________________
*Signature of defendant's attorney*

Michael A. Swinton
*Printed name of defendant's attorney*

____________________________________
*Judge's signature*

____________________________________
*Judge's printed name and title*